IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| OSCAR ELIZONDO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CONVERGENT OUTSOURCING, INC.; VELOCITY INVESTMENTS LLC; TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA; UNITED STATES FIRE INSURANCE COMPANY; and JOHN DOES 3-25,<br><br>Defendants. | Civil Action No. 1:22-cv-00082-RP |

**FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT AND TEXAS DEBT COLLECTION ACT, AND DEMAND FOR JURY TRIAL**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff, Oscar Elizondo, individually and on behalf of all others similarly situated, by way of this Amended Complaint against Defendants, Convergent Outsourcing, Inc. ("Convergent"), Velocity Investments LLC ("Velocity"), Travelers Casualty and Surety Company of America ("Travelers"); United States Fire Insurance Company ("USFIC"), and DOES 3-25 ("DOES"), states:

### I.  NATURE OF THE ACTION

1. Plaintiff, individually and on behalf of the class he seeks to represent, and demanding a trial by jury, against Defendants who used unfair, unconscionable, false, deceptive, and misleading practices, and other illegal practices, in connection with their attempts to collect alleged debts from him and other similarly situated consumers without disclosing the debts being collected are time-barred. Plaintiff alleges that Defendants' collection practices violate the Fair

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| OSCAR ELIZONDO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CONVERGENT OUTSOURCING, INC.; VELOCITY INVESTMENTS LLC; TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA; UNITED STATES FIRE INSURANCE COMPANY; and JOHN DOES 3-25,<br><br>Defendants. | Civil Action No. 1:22-cv-00082-RP |

**FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT AND TEXAS DEBT COLLECTION ACT, AND DEMAND FOR JURY TRIAL**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff, Oscar Elizondo, individually and on behalf of all others similarly situated, by way of this Amended Complaint against Defendants, Convergent Outsourcing, Inc. ("Convergent"), Velocity Investments LLC ("Velocity"), Travelers Casualty and Surety Company of America ("Travelers"); United States Fire Insurance Company ("USFIC"), and DOES 3-25 ("DOES"), states:

### I.  NATURE OF THE ACTION

1. Plaintiff, individually and on behalf of the class he seeks to represent, and demanding a trial by jury, against Defendants who used unfair, unconscionable, false, deceptive, and misleading practices, and other illegal practices, in connection with their attempts to collect alleged debts from him and other similarly situated consumers without disclosing the debts being collected are time-barred. Plaintiff alleges that Defendants' collection practices violate the Fair

Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692-1692p and Texas Debt Collection Act (TDCA), Tex. Fin. Code § 392, *et seq*.

2. The FDCPA regulates the behavior of collection agencies who attempt to collect debts asserted to be owed or due another. The United States Congress found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to a number of personal bankruptcies, marital instability, loss of jobs, and invasions of individual privacy. Congress enacted the FDCPA to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote uniform State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692(a) - (e).

3. The FDCPA is a strict liability statute, which provides for actual or statutory damages upon the showing of one violation. In reviewing an FDCPA complaint, courts "must evaluate any potential deception in the letter under an unsophisticated or least sophisticated consumer standard, assuming that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors." *McMurray v. ProCollect, Inc*., 687 F.3d 665 (5th Cir. 2012).

4. To prohibit deceptive and unfair practices, the FDCPA, at 15 U.S.C. § 1692c, governs how debt collectors may communicate with consumers. Among these *per se* violations are communicating with consumers without the consumer's prior consent given directly to the debt collector or the express permission of a court of competent jurisdiction, if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, 15 U.S.C. § 1692c(a)(2).

5. To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading collection practices and names a non-exhaustive list of

certain *per se* violations of false and deceptive collection conduct. 15 U.S.C. § 1692e(1)-(16). Among these *per se* violations are: making false representations concerning the character, amount, or legal status of any debt, 15 U.S.C. § 1692e(2)(A); threatening to take any action that cannot legally be taken or is not intended to be taken, 15 U.S.C. § 1692e(5); and the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer, 15 U.S.C. § 1692e(10).

6. To prohibit unconscionable and unfair practices, the FDCPA at 15 U.S.C. § 1692f, outlaws the use of unfair or unconscionable means to collect or attempt to collect any debt and names a non-exhaustive list of certain *per se* violations of unconscionable and unfair collection conduct. 15 U.S.C. §§ 1692f (1)-(8).

7. The TDCA, like the FDCPA, prohibits debt collectors from using deceptive, coercive, threatening, abusive, and other repugnant practices when collecting a consumer debt. Tex. Bus. & Com. Code Ann § 17.50; *Cushman v. GC Services, L.P.*, 397 Fed. Appx. 24 (5th Cir. 2010) (discussing the "tie-in" provision between the TDCA and deceptive practices Acts).

8. This case involves an obligation, or an alleged obligation, primarily for personal, family, or household purposes, and arising from a transaction or alleged transaction. As such, this action arises out of "consumer debt" as that term is defined by Tex. Fin. Code § 392.001(2).

9. Plaintiff, on behalf of himself and others similarly situated, seeks statutory damages, injunctive relief, attorney fees, costs, and all other equitable or legal relief this Court deems appropriate under the FDCPA, TDCA, and other common law or statutory regimes.

## II. PARTIES

10. Plaintiff is a natural person.

11. At all times relevant to this Complaint, Elizondo was a citizen of Texas, and resided in Travis County, Texas.

12. Convergent is a for-profit corporation organized under Washington law.

13. Convergent maintains its principal place of business at 800 SW 39th Street, Suite 100, Renton, Washington.

14. Convergent may be served with process in the State of Texas through its registered agent, Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201, or wherever it may be found.

15. Velocity is a limited liability company organized under New Jersey law.

16. Velocity maintains its principal place of business at 1800 Route 34 North, Building 3, Suite 305, Wall Township, New Jersey 07719.

17. Velocity may be served with process in the State of Texas through its registered agent, Corporation Service Company d/b/a CSC Lawyers Incorporating Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701, or wherever it may be found.

18. Travelers is a Connecticut corporation operating as an unlicensed casualty and surety company within the State of Texas.

19. Travelers maintains its principal business address at One Tower Square, Hartford, Connecticut 06183.

20. USFIC is a Delaware corporation operating as an unlicensed casualty and surety company within the State of Texas.

21. On information and belief, USFIC maintains its principal business address at 305 Madison Avenue, Morristown, New Jersey 07962.

22. USFIC may be served with process via its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201, or wherever it may be found.

23. Texas Finance Code § 392.101(a) provides "[a] third-party debt collector…may not engage in debt collection unless the third-party debt collector… has obtained a surety bond

issued by a surety company authorized to do business in Texas."

24. Texas Finance Code § 392.101(b)(1) provides that "[t]he third-party debt collector's surety bond must be in favor of any person who is damaged by a violation of [Texas Finance Code § 392, *et seq*.]."

25. Texas Finance Code § 392.102 provides that "[a] person who claims against a bond for violation of [Texas Finance Code § 392, *et seq*.] may maintain an action against the third-party debt collector…and against the surety."

26. Travelers issued Convergent a bond in favor of all persons damaged by Convergent's TDCA violations.

27. Plaintiff, and the putative class members he seeks to represent, have been, and continue to be, damaged by Convergent's TDCA violations and, therefore, he is claiming against the bond Travelers issued to Convergent.

28. Travelers is liable to Plaintiff, and the putative class members he seeks to represent, to the full extent of Convergent's liability up to the $10,000.00 limit of its bond.

29. USFIC issued Velocity a bond in favor of all persons damaged by Velocity's TDCA violations.

30. Plaintiff, and the putative class members he seeks to represent, have been, and continue to be, damaged by Velocity's TDCA violations and, therefore, he is claiming against the bond USFIC issued to Velocity.

31. USFIC is liable to Plaintiff, and the putative class members he seeks to represent, to the full extent of Velocity's liability up to the $10,000.00 limit of its bond.

32. DOES 3-25 are sued under fictitious names as their true names and capacities are yet unknown to Plaintiff. Plaintiff will amend this complaint by inserting the true names and capacities of the DOE defendants once they are ascertained.

33. DOES 3-25 are natural persons and/or business entities all of whom reside or are located within the United States who personally created, instituted and, with knowledge that such practices were contrary to law, acted consistent with, conspired with, engaged in, and oversaw Convergent and Velocity's violative policies and procedures used by its employees that are the subject of this Complaint. DOES personally control, and engaged in, the illegal acts, policies, and practices used by Convergent and Velocity and, thus, personally liable for all wrongdoing alleged in this Complaint.

### III. JURISDICTION AND VENUE

34. This Court's jurisdiction arises under 15 U.S.C. § 1692k(d), and 28 U.S.C. §§ 1331 and 1337.

35. Supplemental jurisdiction for Plaintiff's state law claims arises under 28 U.S.C. § 1367.

36. Venue is appropriate in this federal district pursuant to 28 U.S.C. § 1391 because the events giving rise to the claims occurred within this federal judicial district, and because the named Defendants regularly transacts business within this federal judicial district and, therefore, reside in this federal judicial district within the meaning of 28 U.S.C. § 1391(b) and (c).

### IV. FACTUAL ALLEGATIONS

37. Convergent is regularly engaged in the collection of defaulted consumer debts.

38. Velocity is regularly engaged in the collection of defaulted consumer debts.

39. Velocity's business is acquiring portfolios of defaulted consumer debts from third parties, without recourse, for pennies on the dollar and liquidating it for a profit.

40. Velocity undertakes to liquidate the defaulted consumer debts it purchases by sending letters and making telephone calls to consumers.

41. Velocity also liquidates its portfolio of defaulted consumer debts by regularly

filing lawsuits against consumers with little to no admissible evidence to prove its claims.

42. Not including lawsuits filed in Justice of the Peace Courts (where most collection lawsuits are filed), Velocity has filed thousands of collection lawsuits against Texas consumers in courts located throughout the State of Texas and many of which result in default judgments.

43. Velocity also regularly collects or attempts to collect, directly or indirectly, defaulted consumer debts owed to others.

44. Velocity uses the mail, telephone, internet, and other instruments of interstate commerce when attempting to collect defaulted consumer debts.

45. In connection with its debt servicing operations, Velocity routinely hired Convergent to send Texas consumers send dunning letters to collect Velocity's defaulted debts.

46. Velocity specializes in acquiring portfolios of "distressed" defaulted consumer debts from third parties that is difficult to collect, but highly profitable, when consumers pay.

47. Convergent has expertise in collecting "distressed," and often uncollectable defaulted consumer debts especially debts which are no longer judicially enforceable.

48. Convergent is a business whose principal purpose is the collection of defaulted consumer debts owed to others.

49. In attempting to defaulted collect debts, Convergent regularly uses instruments of interstate commerce, including the mails, telephone, and internet.

50. Convergent uses the mail, telephone, internet, and other instruments of interstate commerce when attempting to collect defaulted consumer debts.

51. With respect to the debts relevant to this class action, Convergent and Velocity acted in concert with each other to generate revenue from acquiring and then attempting to collect defaulted consumer debts that were charged-off and sold by the original creditor and now no longer judicially enforceable.

52. Elizondo allegedly incurred a financial obligation to Santander Consumer USA, Inc. for personal, family, or household purposes ("Debt").

53. The last payment on the Debt was made on or about October 5, 2016, and thereafter it went into default.

54. After Elizondo defaulted, Santander Consumer USA, Inc. charged-off the Debt and sold it as part of a larger portfolio of defaulted debts to an unknown bulk purchaser of defaulted consumer debts.

55. Creditors charge-off debts in accordance with federal regulations that permit the creditor to remove the debt from their financial records. *See* Victoria J. Haneman, *The Ethical Exploitation of the Unrepresented Consumer*, 73 Mo. L. Rev. 707, 713-14 (2008) ("a credit card account is characterized as a 'charge-off' account (or worthless account for taxable purposes) when no payment has been received for 180 days."). These charged-off accounts are treated as a loss and the creditor receives a tax deduction under the Internal Revenue Code.

56. Prior to February 8, 2021, the Debt's subsequent owner either directly or through intermediate transactions, assigned, placed, transferred, or sold Velocity the distressed Debt.

57. Velocity now purports to be the Debt's current owner.

58. Velocity contends the Debt is in default.

59. Convergent contends the Debt is in default.

60. Convergent mailed Plaintiff a letter dated February 8, 2021 ("2/8/21 Letter").

61. A true copy of the 2/8/21 Letter is attached as ***Exhibit A***, except the undersigned has redacted portions of it.

62. ***Exhibit A*** was mailed on or after the Letter's date.

63. ***Exhibit A*** was sent to Plaintiff in an attempt to collect the Debt.

64. ***Exhibit A*** is false, deceptive, and misleading and misleading to unsophisticated

consumers because it fails to disclose the Debt is time-barred debt and unenforceable.

65. ***Exhibit A*** was sent to Plaintiff in an attempt to collect the Debt.

66. Under Chapter 16.004(a)(3) of the Texas Civil Practice & Remedies Code, a lawsuit for breach of contract must be filed not later than four years after the day the cause of action accrues.

67. As of February 8, 2021, over four years had passed since the Debt was in default.

68. After purchasing defaulted consumer debts, Velocity, through its agents like Convergent, undertakes various means to collect its "distressed," time-barred, debts from Texas consumers by engaging in a campaign sending thousands of dunning collection letters in the form attached as ***Exhibit A*** that offer to settle and/or "satisfy" a consumer's defaulted debt for a large "discount" that is only available for a limited time for the consumer to accept.

69. ***Exhibit A*** offered Plaintiff an "opportunity" to settle the Debt "in full for 50% of [his] total amount owed" but warned payment must "received in [Convergent's] office by an agreed upon date" and if he did not call Convergent "within 60 days" it "was not obligated to renew this offer."

70. The statement in ***Exhibit A*** that if Plaintiff did not call Convergent "within 60 days" Convergent "was not obligated to renew this offer" was untrue because Convergent is always obligated to make that "offer" for as long as it continues to collect the Debt.

71. Neither Velocity nor Convergent has any legal basis to file a lawsuit against Plaintiff or other similarly situated Texas consumers to collect defaulted debts that are more than four years old, as those debts are legally non-enforceable.

72. Convergent regularly attempts to collect defaulted consumer debts on which the statute of limitations has expired.

73. At all times relevant, Velocity knew Convergent regularly attempts to collect defaulted consumer debts, in Texas and elsewhere, on which the statute of limitations is expired.

74. ***Exhibit A*** falsely implies the Debt is legally enforceable by offering Plaintiff a high discounted settlement to "satisfy" the "full amount" of the Debt.

75. ***Exhibit A*** fails to disclose the Debt was barred by the statute of limitations and not legally enforceable.

76. ***Exhibit A*** fails to disclose that Velocity could not sue him to collect the Debt.

77. ***Exhibit A*** does not provide any information regarding when the Debt was incurred or the default date.

78. Convergent regularly mails Texas consumers letters, in the form of ***Exhibit A***, offering to settle debts on which the statute of limitations expired without disclosing that fact.

79. It is the policy and practice of Convergent and Velocity to send Texas consumers letters, in the form of ***Exhibit A***, that seek to collect time-barred debts without disclosing that the debt is time-barred and that the creditor will not sue to collect it.

80. ***Exhibit A*** is false, deceptive, and misleading and misleading to unsophisticated consumers because it fails to disclose that any partial payment on the Debt could reinstate the applicable statute of limitations.

81. Plaintiff understood ***Exhibit A***, as would an unsophisticated consumer, that the Debt remained legally enforceable and that he continued to have a legal obligation to pay it.

82. Plaintiff understood ***Exhibit A***, as would an unsophisticated consumer, that Velocity might sue him if he did not pay the Debt or call Convergent to make arrangements.

83. Plaintiff was alarmed, confused, misled, and worried when he received ***Exhibit A***, as an unsophisticated consumer would be, and therefore he sought the advice of an attorney because he wanted to satisfy his legal obligations and avoid being sued.

84. ***Exhibit A*** created a false sense of urgency for Plaintiff, as it would for an unsophisticated consumer, by requiring a response within "60 days" and further stating that "we are not obligated to renew this offer."

85. The Federal Trade Commission has determined that "Most consumers do not know their legal rights with respect to collection of old debts past the statute of limitations.... When a collector tells a consumer that she owes money and demands payment, it may create the misleading impression that the collector can sue the consumer in court to collect that debt." (*See* http://www.ftc.gov/opa/2012/01/asset.shtm).

86. In early 2012, the FTC entered into a consent decree with Asset Acceptance requiring that it disclose to consumers when it is attempting to collect debts that are barred by the statute of limitations. *United States of America (For the Federal Trade Commission) v. Asset Acceptance, LLC*, Case No. 8:12-cv-182-T-27EAJ (M.D.Fla.).

87. On October 1, 2012, the Consumer Financial Protection Bureau, which has taken over much of the FTC's enforcement responsibility and has been granted rule-making authority with respect to debt collection, the Federal Deposit Insurance Corporation, the Federal Reserve Board, and the Office of the Comptroller of the Currency entered into consent orders with three American Express-related entities requiring disclosure that debts they attempt to collect were time-barred. 2012-CFPB-0002; 2012-CFPB-0003; 2012-CFPB-0004. The orders require that "the Bank shall continue to provide disclosures concerning the expiration of the Bank's litigation rights when collecting debt that is barred by the applicable state statutes of limitations...." (2012-CFPB-0002, p. 6 of 35, 2012-CFPB-0003, p. 5 of 28).

88. The October 1, 2012 orders further require disclosure of "all material conditions, benefits and restrictions concerning any offer of settlement. . . ." (2012-CFPB-0002, p. 7 of 35, 2012-CFPB-0003, p. 6 of 28). Thus, they recognize that "settlement offers" that fail to disclose

material information may be misleading.

89. On January 30, 2013, the FTC issued its report, *The Structure and Practices of the Debt Buying Industry*, available at http://www.ftc.gov/os/2013/01/ debtbuyingreport.pdf. The report reaffirms its position in the *United States of America v. Asset Acceptance, LLC*, No. 8:12-cv-182-T-27EAJ (M.D. Fla. 2012), *American Express Centurion Bank* (FDIC-12-315b, FDIC-12-316k, 2012-CFPB-0002), *American Express Bank, FSB* (2012-CFPB-0003) and *American Express Travel Company, Inc.* (2012-CFPB-0004) cases, that a defendant may violate the FDCPA by sending a collection letter demanding payment of a time barred debt without disclosing that the debt was time barred.

90. The report cites to a study (Timothy E. Goldsmith & Natalie Martin, *Testing Materiality Under the Unfair Practices Acts: What Information Matters When Collecting Time-Barred Debts?*, 64 Consumer Fin. L.Q. Rep. 372 (2010)) that establishes the disclosure that a debt is time barred in a debt collection letter is material to the consumer.

91. Courts have also held that a debt collector's "settlement" offer made to consumers on a time-barred debt is misleading. *See e.g., Daugherty v. Convergent Outsourcing,* Inc., 836 F.3d 507 (5th Cir. 2016); and *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014).

92. Convergent and its officers, directors, partners, and owners directly authorized, created, instituted, implemented, and controlled the violative policies and procedures used by the other Defendants that are the subject of this class action.

93. Velocity and its officers, directors, partners, and owners directly authorized, created, instituted, implemented, and controlled the violative policies and procedures used by the other Defendants that are the subject of this class action.

## V.　　CLASS ALLEGATIONS

94.　　Plaintiff brings this action individually and as a class action on behalf of all other persons similarly situated pursuant to Fed. R. Civ. P. 23.

95.　　Subject to discovery and further investigation which may cause Elizondo to modify the class definition to be more or less inclusive, he defines the "Class" to include:

> All natural persons with a Texas address to whom Convergent mailed a letter between March 14, 2020 and March 14, 2022, in the form of *Exhibit A*, which sought to collect a debt on behalf of Velocity, and the last payment on the debt occurred more than four years prior to the date of the letter.

Elizondo also defines a "Collection Complaint Subclass" to include:

> Each person who is a Class member but whose collection letter, in the form of *Exhibit A*, was sent between March 14, 2021 and March 14, 2022.

96.　　The Class and Subclass excludes each person who, prior to the date this action is certified to proceed as a class action, either (a) died, (b) obtained a discharge in bankruptcy, (c) commenced an action in any court against Defendants alleging a violation of the FDCPA or TDCA based on a template letter, or (d) signed a general release of claims against Convergent. The Class also excludes Elizondo's counsel, or an employee or family member of his counsel.

97.　　Based on discovery and further investigation (including, but not limited to, disclosure of class size and net worth), Elizondo may, in addition to moving for class certification using modified definitions of the Class and Claims, seek class certification only as to particular issues as permitted under Fed. R. Civ. P. 23(c)(4).

98.　　Each Class member's identity is readily ascertainable from Convergent and Velocity's business records.

99.　　This action is brought, and may properly be maintained as, a class action under Fed. R. Civ. P. 23(a) because there is a well-defined community interest in the litigation in that:

99.01.   ***Numerosity***. The Class and Subclass members are so numerous and geographically disbursed that joinder of all members is impractical because there are more than 40 such Class and Subclass members.

99.02.   ***Commonality***. Common questions of law and fact exist as to all Class and Subclass members, the principal issues are: whether Defendants' conduct, as described above, was the same or substantially similar with respect to Defendants' attempts to collect debts from the Plaintiff and Class members; and whether such conduct violated the FDCPA and TDCA.

99.03.   ***Typicality***. Plaintiff's claims are typical of Class and Subclass members' claims because the claims arise from Defendants' standardized course of conduct as set forth in the *Factual Allegations*.

99.04.   ***Adequacy***. Plaintiff will fairly and adequately protect Class members' interests because Plaintiff's interests are not averse to the absent class members and because he is committed to vigorously litigating this matter. Plaintiff retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions.

100.   Certification of a Class under Fed. R. Civ. P. 23(b)(2) is appropriate in that a determination that Defendants' written communications to Texas consumers in the form of **Exhibit A** violates Tex. Fin. Code §§ 392.304(a)(8) or 392.304(a)(19) would permit Plaintiff and the Class to obtain injunctive relief under Tex. Fin. Code § 392.403(a)(1).

101.   This action may also be maintained as a hybrid class action under Fed. R. Civ. P. 23(b)(3) because the questions of law and fact common to all Sub-Class members predominate over questions affecting any individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The individual

joinder of all Class members is impracticable, class action treatment will permit a large number of similarly situated persons to efficiently prosecute their common claims in a single forum without unnecessary duplication of effort and expense that individual actions engender, an important public interest is served by addressing the matter as a class action, substantial expenses to the litigants and to the judicial system will be realized, and difficulties are unlikely in the management of a class action.

## VI.  COUNT ONE: VIOLATION OF THE FDCPA

102. The Factual Allegations are incorporated by reference.

103. Convergent is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

104. Velocity is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

105. The Debt is a "debt" within the meaning of 15 U.S.C. § 1692a(5).

106. Elizondo is a "consumer" within the meaning of 15 U.S.C. § 1692a(3).

107. *Exhibit A* is a "communication" within the meaning of 15 U.S.C. § 1692a(2).

108. Defendants violated the FDCPA with respect to Plaintiff and Subclass members.

109. Such FDCPA violations with respect to *Exhibit A* include, but are not limited to:

   109.01. Using false, deceptive, and misleading representations and means in connection with the collection of any debt in violation of 15 U.S.C. § 1692e;

   109.02. Falsely representing the character, amount, or legal status of any debt, in violation of 15 U.S.C. § 1692e(2)(A);

   109.03. Threatening to take any action that cannot legally be taken in violation of 15 U.S.C § 1692(5);

   109.04. Using false representations and deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer in violation of 15 U.S.C. § 1692e(10); and

109.05. Using unfair or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. § 1692f.

## VII. COUNT TWO: VIOLATION OF THE TDCA

110. The Factual Allegations are incorporated by reference.

111. Convergent is engaged in the act and/or practice of "debt collection" within the meaning of Tex. Fin. Code § 392.001(5).

112. Velocity is engaged in the act and/or practice of "debt collection" within the meaning of Tex. Fin. Code § 392.001(5).

113. Convergent is a "debt collector" as defined by Tex. Fin. Code § 392.001(5).

114. Velocity is a "debt collector" within the meaning of Tex. Fin. Code § 392.001(5).

115. Convergent is a "third-party debt collector" as defined by Tex. Fin. Code § 392.001(7).

116. Velocity is a "third-party debt collector" within the meaning of Tex. Fin. Code § 392.001(7).

117. Velocity is a "debt buyer" within the meaning of Tex. Fin. Code § 392.307(2).

118. The Debt is a "consumer debt" as defined by Tex. Fin. Code § 392.001(2).

119. The Debt is a "charged-off debt" as defined by Tex. Fin. Code § 392.307(1).

120. Elizondo is a "consumer" within the meaning of Tex. Fin. Code § 392.001(1).

121. Defendants violated the TDCA with respect to Elizondo and the Class members.

122. Such TDCA violations with respect to *Exhibit A* includes, but is not limited to:

122.01. Misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding, in violation of Tex. Fin. Code § 392.304(a)(8);

122.02. Using a false representation or deceptive means to collect a debt in

violation of Tex. Fin. Code § 392.304(a)(19);

122.03. Failing to provide consumers with notice required by Tex. Fin. Code § 392.307(c).

123. Additionally, Velocity violated Tex. Fin. Code § 392.306 by hiring Convergent to collect the Debt because it had actual knowledge that Convergent repeatedly or continuously engages in acts or practices that are prohibited by the TDCA.

124. Convergent and Velocity's illegal conduct invaded Plaintiff's rights which are protected by the TDCA, the invasion of which caused injury-in-fact.

## VIII. PRAYER FOR RELIEF.

125. WHEREFORE, Plaintiff respectfully requests the Court enter judgment against Convergent and Velocity, jointly and severally, as follows:

A. *With respect to Count One:*

125.01. Certifying that this action may be maintained as a class action under Fed. R. Civ. P. 23 including defining the Class, Subclass, and Subclass claims, and appointing Plaintiff to represent the Class and his attorneys as Class counsel;

125.02. Awarding Plaintiff and Subclass members such actual damages as may be proven under 15 U.S.C. § 1692k(a)(1)

125.03. Awarding Plaintiff statutory damages under 15 U.S.C. § 1692k(a)(2)(A) and § 1692k(a)(2)(B)(i);

125.04. Awarding Subclass members statutory damages under 15 U.S.C. § 1692k(a)(2)(B)(ii);

125.05. Awarding Plaintiff an incentive payment for his services to the Subclass in an amount the Court determines after judgment is entered in favor of

the Subclass;

125.06. Adjudging this action is a successful action under 15 U.S.C. § 1692k(a)(2)(B)(3) and awarding reasonable attorneys' fees including litigation expenses; and

125.07. For such other and further relief the Court determines is just and proper.

B. *With respect to Count Two:*

125.08. Certifying this action to be maintained as a class action under Fed. R. Civ. P. 23 including defining the Class and Class claims, and appointing Plaintiff as Class representative and his attorneys Class counsel;

125.09. Awarding injunctive relief under Tex. Fin. Code § 392.403(a)(1) to restrain Convergent and Velocity's further violations of Chapter 392 of the Texas Finance Code;

125.10. Awarding such actual damages as may be proven to Plaintiff and members of the Class under Tex. Fin. Code § 392.403(a)(2);

125.11. An Order directing Travelers to issue payment on the bond it issued Convergent in favor of Plaintiff and the Class in an amount to be determined at trial, but not to exceed $10,000.00

125.12. An Order directing USFIC to issue payment on the bond it issued Velocity in favor of Plaintiff and the Class in an amount to be determined at trial, but not to exceed $10,000.00;

125.13. Awarding Plaintiff an incentive payment for services to the Class in an amount the Court determines after judgment is entered for the Class;

125.14. Adjudging Plaintiff successfully maintained an action under Tex. Fin.

Code § 392.403(a), and awarding reasonable attorney's fees and costs under Tex. Fin. Code § 392.403(b); and

125.15. For such other and further relief the Court determines is just and proper.

## IX. JURY DEMAND.

126. Demand is hereby made for trial by jury.

Dated: March 14, 2022

Respectfully submitted,

*s/ Andrew T. Thomasson*
Andrew T. Thomasson (NJ Bar No. 048362011)
Francis R. Greene (IL Bar No. 6272313)
Benjamin T. Trotter (TX Bar No. 24082567)
   THOMASSON PLLC
16414 San Pedro Avenue, Suite 700
San Antonio, TX 78232-2272
Telephone: (973) 312-0774
Facsimile: (973) 559-5779
Email: Andrew@Thomassonpllc.com
Email: Francis@Thomassonpllc.com
Email: Ben@Thomassonpllc.com

Brent A. Devere (TX Bar No. 00789256)
   LAW OFFICES OF BRENT A. DEVERE
1411 West Avenue, Suite 200
Austin, Texas 78701
Telephone: (512) 457-8080
Facsimile: (512) 457-8060
Email: BDevere@1411west.com

*Attorneys for Plaintiff, Oscar Elizondo*

## CERTIFICATE OF SERVICE

I, Andrew T. Thomasson, hereby certify that on March 14, 2022, I served a copy of the foregoing on all Parties' counsel of record by filing it with the Court's CM/ECF System.

*s/ Andrew T. Thomasson*
ANDREW T. THOMASSON